OPINION
{¶ 1} Defendant-appellant, Jon M. Hillyer, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to a jury verdict, of murder in violation of R.C. 2903.02. Because the trial court did not abuse its discretion on the contested evidentiary rulings, we affirm.
 {¶ 2} In the early morning hours of August 23, 2003, a large fistfight broke out in Jay's Sports Bar on the west side of Columbus, Ohio where, according to a state's witness, defendant displayed a knife during the melee. As the fight spilled into the streets, defendant and the victim "stood real close together" before the victim picked up and threw a brick towards defendant. (Tr. Vol. III, 348.) The victim then ran down an adjoining alley towards 510 South Warren Street ("residence"); defendant pursued, still visibly possessing a knife.
 {¶ 3} The residence's occupants, Tina Chaffin, Robert May, Bobbie Jo May, and Stacy Miller, rustled to the sounds of a scuffle on their front porch. Chaffin went to the front door where he saw a man fighting with the victim. After the man pushed the victim back on the porch banister, Chaffin heard the victim say, "you stabbed me, you stabbed me, why did you stab me?" (Tr. Vol. I, 71.) All four occupants of the residence ran onto the front porch as the assailant jumped the banister and ran across the street towards an adjoining alley. Robert May pursued the assailant; Chaffin, Miller, and Bobbie Jo May stayed with the victim until the paramedics arrived. Robert May testified that the assailant was wearing silky athletic shorts similar to those defendant wore when police stopped him.
 {¶ 4} Columbus Police Officer Barry O'Dell, responding to an earlier call about the bar fight, proceeded to a growing scene near the residence. A person in the crowd, pointing up an alley, informed O'Dell that "someone's been stabbed and the guy who did it ran that way." (Tr. Vol. I, 102.) Using the description the bystander gave, O'Dell apprehended defendant. The police also received a description for a second individual alleged to be involved in the stabbing. According to the description, he wore a black Florida Avengers motorcycle T-shirt and a black hat; he was arrested in the same general vicinity as defendant.
 {¶ 5} Defendant's trial strategy focused almost exclusively on identifying the second individual as the victim's assailant. To that end, defendant repeatedly inquired of the state's witnesses, Robert May, Bobbie Jo May, and Chaffin, whether the victim mentioned that the assailant wore a hat.
 {¶ 6} Robert May remembered the victim saying something about someone in a hat; Chaffin testified she did not hear the victim say anything about a man wearing a hat. Bobbie Jo May testified that on the night of the incident she told the police the victim only asked for help. She admitted, however, that she told defendant's investigator months after the incident that she heard the victim say "the dude in the hat stabbed me." (Tr. Vol. III, 476.) She later explained "there was ten different stories going around that the [assailant] had the hat on. I never seen the guy with the hat on." (Tr. Vol. III, 485.)
 {¶ 7} The state's DNA evidence linked the blood removed from defendant's shoes and socks to the victim and defendant; DNA samples removed from the handle of the knife recovered near the residence also matched defendant's DNA. Dr. Fardal, a forensic pathologist, testified that the victim's wounds were consistent with and compatible to a knife recovered near the residence. The victim died from multiple stab wounds to his torso and chest, two penetrating the right ventricle of his heart.
 {¶ 8} By indictment filed on August 29, 2003, defendant was charged with one count of aggravated murder. After a three-day trial, the jury delivered its verdict finding defendant guilty of the lesser-included offense of murder. The court sentenced defendant to 15 years to life. Defendant appeals, assigning three errors:
Error No. 1
The Trial Court erred in failing to grant, before commencement of trial, the motion of Defendant, Jon M. Hillyer, in limine, regarding admissibility of exculpatory statement of Stacy Miller, deceased at the time of trial, to C.P.D. Detective Brown, on August 23, 2003 @ 4:43 A.M.; identifying "the dude in the hat" as the man who stabbed Gregory C. Allman.
Error No. 2
The Trial Court erred in giving "opinion" to defense counsel to not call investigator Matthew Sauer as a witness, in front of the jury, at trial of Defendant, Jon M. Hillyer; regarding exculpatory evidence, contained in Bobbie Jo May's statements to Mr. Sauer, recorded on December 3, 2003.
Error No. 3
The Trial Court erred in limiting the prior statement (of) Bobbie Jo May solely to impeach her credibility; and for the Jury to not consider her statement "as proof of any other fact," during the trial of Defendant, Jon M. Hillyer.
 I. First Assignment of Error {¶ 9} In his first assignment of error, defendant contends the trial court erred by failing to grant his motion in limine and determine to be admissible a statement from a police summary reflecting that Stacy Miller heard the victim say, "the dude in the hat just stabbed me."
 {¶ 10} Because a motion in limine is "a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue," a ruling on the motion is almost never final and appealable. As a result, "should circumstances subsequently develop at trial, the trial court is certainly at liberty to consider the admissibility of the disputed evidence in its actual context." State v. Grubb
(1986), 28 Ohio St.3d 199, 201-202. An appellate court thus need not review the propriety of such an order unless the claimed error is preserved by a timely objection on the record when the issue actually is reached during the trial. Id. at 203.
 {¶ 11} Here, the trial court granted defendant's motion in limine before trial. At trial, however, the court would not admit the police summary at the close of defendant's case, ruling the evidence was inadmissible hearsay. Although the state argues that defendant conceded the inadmissibility of the police summary in an off-the-record meeting, nothing in the record allows that conclusion. Instead, defendant preserved his right to challenge the court's evidentiary ruling by proffering the police summary on the record. Accordingly, we determine whether the trial court erred in excluding the police summary containing Miller's statement.
 {¶ 12} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Holloway, Franklin App. No. 02AP-984, 2003-Ohio-3298, ¶ 14, citing State v. Sage
(1987), 31 Ohio St.3d 173, 180. The judgment of the trial court will not be reversed absent a clear showing of an abuse of discretion. State v. Scott (June 24, 1997), Franklin App. No. 96APA04-492, citing State v. Hymore (1967), 9 Ohio St.2d 122,128. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. Holloway, at ¶ 14, citing Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 13} Defendant does not contest the basic premise that the police summary is inadmissible under the traditional rules of hearsay; instead, defendant argues the trial court should have admitted the police summary in a "sense of fairness," because the state's untimely disclosure of the evidence contributed to its inadmissibility and violated defendant's due process rights underBrady v. Maryland (1963), 373 U.S. 83 and its progeny.
 {¶ 14} Under Brady, a prosecutor's suppression of requested evidence favorable to an accused violates due process "where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. Defendant has the burden of proving a Brady violation and denial of due process. State v. Jackson (1991),57 Ohio St.3d 29, 33. "In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." State v. Johnston (1988), 39 Ohio St.3d 48, paragraph five of the syllabus. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense." United States v.Agurs (1976), 427 U.S. 97, 109-110; see United States v.Bagley (1985), 473 U.S. 667.
 {¶ 15} Here, in September 2003, the prosecution disclosed to defendant the names of 64 witnesses, including the four witnesses who occupied the residence on the morning of the stabbing. Although the prosecution then was not aware of any evidence favorable to the defendant, the prosecution ultimately provided defendant with a police summary on February 20, 2004. The police summary contained Stacy Miller's statement, given on the morning of the stabbing, indicating that the victim told her "the dude in the hat just stabbed me." Unbeknown to either party at the time, Miller died in an automobile accident on February 18, 2004. Because the trial court deemed the police summary to be hearsay, and because Miller was unable to testify at trial or by deposition, Miller's statement regarding the victim's alleged description of his killer was not presented to the jury.
 {¶ 16} Defendant maintains the police summary containing Miller's statement is exculpatory under Brady because it implicates the second arrested individual who was wearing a black hat the morning of the stabbing. Although defendant concedes that the police summary containing Miller's statement is inadmissible hearsay, defendant argues that had the state timely notified defendant of Miller's statement, "they could have taken appropriate steps to preserve Miller's testimony" by deposition under Crim.R. 15 and admit it as a hearsay exception pursuant to Evid.R. 804(B)(2) (Statement Under Belief of Impending Death) or Evid.R. 804(3) (Excited Utterance).
 {¶ 17} Defendant further contends he would have achieved a different result at trial with the additional evidence. Specifically, defendant contends the police photographs depicting the second arrested individual wearing a hat and defendant hatless, coupled with Miller's exculpatory statement, would result in acquittal because the evidence describes someone other than defendant as the victim's killer and directly challenges the credibility of the state's theory of prosecution. Defendant thus asserts that because the state's untimely disclosure violated his due process rights under Brady, the principles of fairness should override the traditional rules of hearsay and render the police summary admissible in this case.
 {¶ 18} When reviewing whether the trial court committed reversible error based upon a Brady violation, "we remain mindful that it is the burden of the defense to prove a Brady
violation rising to the level of denial of due process." Statev. Iacona (2001), 93 Ohio St.3d 83, 92, citing Jackson, at 33. Because defendant sufficiently proved that Miller's statement potentially exculpates defendant, the issue resolves to whether defendant proved with "reasonable probability that, had the evidence been [timely] disclosed to the defense, the result of the proceeding would have been different." Johnston, at 61.
 {¶ 19} Defendant claims that had the state timely disclosed the police summary, defendant could have taken appropriate steps to preserve Miller's testimony under Crim.R. 15. Nothing in the record, however, supports defendant's stated intention. Crim.R. 15 allows a defendant to take a deposition of a prospective witness "[i]f it appears probable that the prospective witness will be unable to attend or will be prevented from attending trial." Stacy Miller died unexpectedly in an automobile accident when she was 16 years old. Defendant sets forth no set of circumstances that demonstrate why he would expect Miller to be unable to attend, or prevented from attending the trial.
 {¶ 20} In fact, the record suggests defendant did not intend to depose Miller. Defendant called a similarly aged and similarly situated Bobbie Jo May as a trial witness. Although defendant fully expected Bobbie Jo's testimony to mirror Stacy Miller's statement in the police summary, defendant did not depose Bobbie Jo May before trial. Even after defendant learned of Stacy Miller's unexpected death, defendant did not preserve Bobbie Jo's testimony. Because defendant cannot demonstrate with reasonable probability that a timely disclosure of the police summary would have preserved Miller's testimony, and thus fails to prove how Miller's testimony would be admissible at trial, defendant fails to prove how the state's untimely disclosure affected the outcome of the trial.
 {¶ 21} Even if the defense counsel deposed Miller before her death and found a valid basis under the evidentiary rules to present her testimony to the jury, the record supports no reasonable probability that the trial result would have been different. The state identified defendant as the assailant through multiple witnesses' testimony. A witness testified defendant displayed a knife during the fight at Jay's Sports Bar and saw defendant with the knife as he pursued the victim through an alleyway toward the residence. The clothing defendant wore the morning of the stabbing matched the description Robert May gave, and Officer O'Dell testified he apprehended defendant according to a description a bystander proffered. DNA evidence linked the blood removed from defendant's shoes and socks to the victim and to defendant; DNA samples removed from the handle of the knife recovered near the residence also matched defendant's DNA.
 {¶ 22} Further, defendant repeatedly asked Robert May, Tina Chaffin, and Bobbie Jo May whether they heard the victim mention anything about a man in a hat. Robert May testified he heard the victim say something about a man in a hat to someone. By coupling the testimony from Robert May with police photographs that depicted the second arrested individual wearing a hat and defendant hatless, defendant was able to allow the jury to consider evidence implicating another individual as the assailant.
 {¶ 23} We do not suggest that the evidence defendant was able to present to the jury was as strong as testimony from Miller stating "the dude in the hat stabbed me." Indeed, defendant contends the timing of Miller's testimony necessarily would have made her statement stronger than that of Bobbie Jo May, because Miller voluntarily gave the potentially exculpatory statement on the morning of the stabbing. Defendant, however, has no assurance that Miller would testify differently than did Bobbie Jo May, and, even if she did, that the jury would believe Miller rather than Bobbie Jo May. While that observation alone may be insufficient grounds to overrule defendant's assignment of error, that possibility combined with the noted contingencies that surround defendant's contentions regarding Miller's exculpatory testimony lead us to conclude that defendant failed to prove with "reasonable probability that, had the evidence been [timely] disclosed to the defense, the result of the proceeding would have been different." Johnston, supra. Defendant's first assignment of error is overruled.
 II. Second and Third Assignments of Error {¶ 24} In his second and third assignments of error, defendant contends the trial court erred by (1) denying defendant's request to call his investigator as a witness to impeach the testimony of Bobbie Jo May, and (2) instructing the jury to limit Bobbie Jo May's prior inconsistent statement to its impeachment value and not consider it as proof of any other fact.
 {¶ 25} Defendant called Bobbie Jo May as a witness and, based upon his investigation, expected her to testify that she heard the victim say "the dude in the hat stabbed me." She, however, testified she did not hear the victim say anything about someone in a hat. In response, defendant moved the court for permission to treat Bobbie Jo May as a hostile witness. During the hearing on the motion out of the presence of the jury, defendant's investigator testified he interviewed Bobbie Jo May on December 3, 2004 and on August 10, 2005. According to the investigator, during each interview Bobbie Jo May stated that she heard the victim say "the dude in the hat stabbed me." At the conclusion of the hearing, Bobbie Jo May acknowledged she so told the investigator.
 {¶ 26} Once the trial resumed, Bobbie Jo May admitted to the jury that she told the investigator she heard the victim say "the dude in the hat stabbed me." Although she recalled the August interview with defendant's investigator, she did not remember the December interview. Defendant tried to refresh her recollection by proffering a summary of the December interview, but she testified she did not remember saying anything contained in the summary.
 {¶ 27} After Bobbie Jo May testified, defendant sought the trial court's "advisory opinion" about his ability to call his investigator as a witness "to refute at least [Bobbie Jo May's] representation regarding her being interviewed on December 3rd, 2004, what she said during that interview." (Tr. Vol. III, 486.) The court found "no need to call [the investigator]" because Bobbie Jo May already admitted she told the investigator in the August interview that she heard the victim say "the dude in the hat stabbed me." After trial, the court gave a limiting instruction to the jury that Bobbie Jo's prior inconsistent statement was admitted solely for "impeaching the credibility of Bobbie Jo May and shall not be considered as proof of any other fact."
 {¶ 28} The trial court did not abuse its discretion by denying defendant's request to call his investigator to impeach Bobbie Jo's testimony. After the hearing outside the presence of the jury, Bobbie Jo admitted during the trial that she told the investigator she heard the victim say "the dude in the hat stabbed me." Defendant thus completely impeached the relevant portion of Bobbie Jo's testimony and secured from her virtually all he could achieve in calling the investigator as a witness.
 {¶ 29} Because defendant impeached Bobbie Jo's credibility be referencing the substantive content of the August interview, Bobbie Jo's testimony regarding her memory of the December interview was largely immaterial to the issue of whether she previously stated that she heard the victim say "the dude in the hat stabbed me." The trial court therefore did not abuse its discretion by denying defense counsel's request to call his investigator. Defendant's second assignment of error is overruled.
 {¶ 30} Similarly, the trial court did not abuse its discretion by instructing the jury to limit Bobbie Jo May's prior inconsistent statement to its impeachment value and to not consider it proof of any other fact. Evid.R. 105 allows the court to instruct the jury to restrict evidence to its proper scope when such evidence is admitted for a limited purpose. When a prior inconsistent statement is offered for the purpose of impeachment, the jury may not consider the prior statement as substantive evidence if the prior statement is inadmissible hearsay. Dayton v. Combs (1993), 94 Ohio App.3d 291; State v.Parsons, Wood App. No. WD-03-051, 2004-Ohio-2216; State v.Hancock, Hamilton App. No. C-030459, 2004-Ohio-1492. Because defendant used Bobbie Jo's prior inconsistent statement to impeach her credibility, and because the prior inconsistent statement was inadmissible hearsay, the trial court properly instructed the jury to limit the statement to its impeachment value. Defendant's third assignment of error is overruled.
 {¶ 31} Having overruled defendant's three assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Petree and Sadler, JJ., concur.