OPINION
{¶ 1} Scott Hancock was charged with domestic violence, in violation of R.C. 2919.25(A), for allegedly causing physical harm to Yvonne Sevier, a person living as his spouse. The offense was charged as a felony of the fifth degree, due to an enhancement for Hancock's prior conviction for domestic violence in 1995. Following a bench trial, Hancock was convicted and sentenced to a twelve-month term of incarceration.
 {¶ 2} Hancock appeals his conviction. He argues that the trial court erred by (1) admitting Sevier's prior inconsistent statements into evidence, (2) intimidating Sevier into modifying her testimony, (3) overruling his motion for judgment of acquittal, and (4) finding him guilty contrary to the manifest weight of the evidence. We sustain the first and third assignments of error, reverse the judgment of the trial court, and discharge Hancock.
 {¶ 3} At trial, the state's witnesses were Sevier and two police officers. Sevier testified that she and Hancock had lived together since 1992, and that they had two children. She testified that Hancock was the sole supporter of their family.
 {¶ 4} Sevier testified that on March 11, 2003, she was alone at their home when Hancock arrived. The two began to argue. Sevier was using the telephone, but Hancock wanted her to get off of it. Sevier said that they began to fight over the phone, "like playing tag with the phone. * * * Tagging, pulling on the phone, you know I was trying to take it from him, he was trying to take it from me. * * * And then the phone hit me in the mouth and it chipped my tooth." Sevier denied that Hancock had struck her.
 {¶ 5} The prosecutor questioned Sevier to determine whether she had been struck by anything other than the phone, and Sevier continued to deny that she had. The prosecutor asserted that he had been surprised by Sevier's testimony that Hancock had not struck her, and that his case had been affirmatively damaged as a result. The prosecutor informed the court that Sevier's prior written and videotaped statements, given to police shortly after the incident, were inconsistent with her testimony at trial. The court allowed the prosecutor to attempt to impeach Sevier with the prior statements.
 {¶ 6} The prosecutor showed Sevier her prior written statement, and Sevier admitted that she remembered it. The prosecutor read to Sevier from the statement: "It says: Scott came home and I was on the phone with my aunt and he struck me two times. Then he left in my truck. He struck me — this looks like on my — I can't read that, forehead and broke my tooth. Did you write that?" Sevier admitted that she had. When asked whether the writing accurately described what had happened, Sevier stated, "A little bit."
 {¶ 7} Sevier said that she had not told the responding police officers that the incident had been an accident because she was angry with Hancock at the time. Sevier testified that she had made a videotaped statement at the police station shortly after the incident.
 {¶ 8} The prosecutor then played the videotaped statement in court, and Sevier admitted that she had made the statement, and that its contents were the same as her written statement. Sevier further admitted that she did not appear angry on the videotape, despite her trial testimony that anger had caused her to tell police that Hancock had hit her.
 {¶ 9} The prosecutor asked Sevier about the difference between her trial testimony and her earlier statements to police: "Is there anything else, anything influencing you, such as you have lived with him for 10 years and you have children together, that you don't want to admit that, what he did on that day?" Sevier responded, "I just know we're going to be together no matter what, when this is all over."
 {¶ 10} The prosecutor continued, "So even if he did strike you on purpose, you would tell us something so that —
 {¶ 11} "[SEVIER]: No.
 {¶ 12} "[PROSECUTOR]: — he wouldn't get convicted.
 {¶ 13} "[SEVIER]: No."
 {¶ 14} The trial court then questioned Sevier. "Obviously, you changed your story, is the question. Now you are saying it was an accident?
 {¶ 15} "[SEVIER]: Right. Because I was angry at the time because he left, broke my phone and left.
 {¶ 16} "THE COURT: You willing to go to prison for —
 {¶ 17} "[SEVIER]: No, I am not.
 {¶ 18} "THE COURT: — for five years for perjury?
 {¶ 19} "[SEVIER]: No.
 {¶ 20} "THE COURT: Is that what — so what is the story going to be then? What is it?
 {¶ 21} "[SEVIER]: That we were arguing.
 {¶ 22} "THE COURT: Well, you were arguing — you said initially after it happened that he actually hit you twice. Now you're telling us that it is an accident. So, either he goes or you go, what is it going to be. You got kids?
 {¶ 23} "[SEVIER]: Right.
 {¶ 24} "THE COURT: What is it going to be? Who is going to jail, you or him?
 {¶ 25} "[SEVIER]: Not me.
 {¶ 26} "THE COURT: Well, what happened then?
 {¶ 27} "[SEVIER]: The phone hit me in the mouth and he hit me in the forehead.
 {¶ 28} "THE COURT: He punched you in the forehead?
 {¶ 29} "[SEVIER]: I am not for sure.
 {¶ 30} "THE COURT: Well, back then you were, you said he hit you twice.
 {¶ 31} "[SEVIER]: Right, not with a punch. I don't know, he went like that or what (indicating.) It happened so fast.
 {¶ 32} "THE COURT: Uh-huh."
 {¶ 33} Following Sevier's testimony and the admission of two photographs depicting Sevier's facial injuries, two police officers testified for the state. Addyston Police Officer Dorian Lacourse described Sevier's facial injuries, which included a bump on her forehead, a chipped tooth, and a bloodshot eye. The officer had asked Sevier to make the written statement about the incident and was present when Sevier made the videotaped statement.
 {¶ 34} Lt. David Palmisano of the Addyston Police Department testified that, shortly after the offense, Officer Lacourse had asked him to look for Hancock at a cousin's apartment. Lt. Palmisano found Hancock at the apartment and asked him about the incident that had occurred at Hancock's home just minutes earlier, but Hancock repeatedly stated that he had not been there.
 {¶ 35} Hancock testified that, when he arrived at the home he shared with Sevier, he had needed to use the telephone. He testified that Sevier had been talking on the telephone at the time. Hancock claimed that the two had gotten into a "tug-of-war" over the telephone. Hancock stated, "I let go [of the telephone] and it hits her in the mouth. At the same time it hits her along ways her forehead and mouth." Hancock denied that he had struck Sevier. Hancock testified that he had gone to his cousin's apartment, where the police found him about ten minutes later.
I. Admission of Sevier's Prior Inconsistent Statements
 {¶ 36} In his first assignment of error, Hancock argues that the trial court erred by admitting Sevier's prior inconsistent statements as substantive evidence of his guilt. Under Evid.R. 607(A), the party calling the witness may attack the witness' credibility by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage.
 {¶ 37} Counsel may demonstrate surprise if a witness's trial testimony was materially inconsistent with the witness's prior statements and counsel had no reason to believe that the witness would recant on the witness stand.[1] The determination of surprise is left to the sound discretion of the trial court.[2] Affirmative damage is demonstrated when the witness testifies to facts that contradict, deny, or harm the party's trial position.[3]
 {¶ 38} In this case, Sevier had told police in written and videotaped statements that Hancock had come home and struck her two times. She said that Hancock had struck her on the forehead and had broken her tooth. At trial, however, Sevier testified that she and Hancock had struggled over the telephone, and that the telephone, not Hancock, had struck her.
 {¶ 39} Clearly, Sevier's trial testimony was materially inconsistent with the statements that she had given to police, and there is no evidence in the record establishing that the prosecutor knew that Sevier would recant when called to testify. Moreover, Sevier's testimony harmed the state's case because the state had no other evidence to demonstrate that Hancock had committed the offense. Under these circumstances, we do not believe that the trial court erred when it allowed the state to impeach Sevier's testimony.
 {¶ 40} But when a prior inconsistent statement is offered for the purpose of impeachment, the trier of fact may only consider the prior statement as substantive evidence if the prior statement is not inadmissible as hearsay.[4] In this case, the state acknowledges that Sevier's prior written and videotaped statements could not be offered as proof that Hancock had hit Sevier under any exclusion or exception to the hearsay rule.[5] But, the state argues, the trial court clearly stated that, although it would admit the statements into evidence, it would not consider the statements as evidence of guilt. The court stated that it would consider the statements only for purposes of assessing Sevier's credibility.
 {¶ 41} Typically, we presume that in a bench trial the court considered only "relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary."[6] Even if the admission of Sevier's prior statements was improper, the error would not be grounds for reversal of Hancock's conviction unless the court relied upon the improperly admitted statements in arriving at its guilty verdict.[7]
 {¶ 42} In order to determine whether the trial court improperly relied upon Sevier's prior inconsistent statements in finding Hancock guilty of domestic violence, we turn to Hancock's argument that his conviction was based upon insufficient evidence.
II. Sufficiency of the Evidence
 {¶ 43} In his third assignment of error, Hancock argues that the trial court erred by overruling his Crim.R. 29 motion for judgment of acquittal because the evidence was insufficient to support his conviction. Our standard of review for the denial of a Crim.R. 29 motion is the same as the standard of review for the sufficiency of the evidence.[8] To reverse a conviction for insufficient evidence, we must be persuaded, after viewing all the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.[9]
 {¶ 44} The domestic-violence statute provides, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."[10] At trial, the state presented evidence that Sevier had suffered physical harm, and that she was a family or household member.[11] While Hancock and Sevier were not married, the state presented evidence that Sevier was a "person living as a spouse," because the two had cohabited for more than ten years, and Hancock had financially supported their family.[12]
 {¶ 45} But the state failed to present substantive evidence that Hancock had knowingly caused Sevier's injuries. Both Sevier and Hancock testified that they had been struggling over the telephone when the telephone struck Sevier. Sevier testified that the telephone had struck her in the mouth and had chipped her tooth. Hancock testified that the telephone had struck Sevier in the mouth and the forehead.
 {¶ 46} We acknowledge that the testimony of Sevier and Hancock as to the cause of Sevier's injuries may have been unbelievable. Sevier's statements to police that Hancock had struck her twice may have been more plausible. But, even assuming that the testimony of Sevier and Hancock lacked a shred of believability, the trial court could not use Sevier's prior statements as evidence of Hancock's guilt because the statements were inadmissible hearsay. When making its determination of guilt, the court was confined to the substantive evidence presented by the state.
 {¶ 47} Because the state presented no substantive evidence that Hancock had knowingly caused Sevier's injuries, we hold that the evidence was legally insufficient to convict him of domestic violence or to deny his Crim.R. 29 motion for acquittal. As a result, we also conclude that the trial court improperly relied upon the impeachment evidence as substantive evidence of Hancock's guilt. Accordingly, we sustain Hancock's first and third assignments of error.
III. Trial Court's Intimidation of the Victim
 {¶ 48} In his second assignment of error, Hancock argues that the trial court erred by threatening Sevier with prosecution for perjury and intimidating her into changing her testimony. The absence of substantive evidence of Hancock's guilt necessitates a discharge, thus rendering this assignment of error moot. Nonetheless, given the egregious nature of the trial court's comments, we feel compelled to remark upon them.
 {¶ 49} The trial court was obviously frustrated by Sevier's apparent recantation. The court stated, "[E]ither he goes or you go, what is it going to be. You got kids?" The court then demanded to know, "What is it going to be? Who is going to jail, you or him?" The court's comments not only indicated an attempt to intimidate Sevier into changing her testimony, but also that the court had predetermined Hancock's guilt after hearing only a portion of the testimony of the state's first witness.[13]
The court's bullying remarks to Sevier "went beyond permissible admonitions about the potential consequences of recantation of prior statements * * * and rose to the level of intimidation."[14]
 {¶ 50} Hancock's challenge to his conviction based upon the weight of the evidence is also rendered moot by our disposition of the first and third assignments of error. Accordingly, we reverse Hancock's conviction and order him discharged from further prosecution for this offense.
Judgment reversed and appellant discharged.
Painter and Sundermann, JJ., concur.
[1] See State v. Holmes (1987), 30 Ohio St.3d 20, 23,506 N.E.2d 204.
[2] See State v. Diehl (1981), 67 Ohio St.2d 389,423 N.E.2d 1112.
[3] See State v. Stearns (1982), 7 Ohio App.3d 11,454 N.E.2d 139.
[4] See Evid. R. 801, 802, 803, and 804; Dayton v. Combs
(1993), 94 Ohio App.3d 291, 640 N.E.2d 863.
[5] See Evid.R. 801, 802, 803, and 804.
[6] State v. Post (1987), 32 Ohio St.3d 380, 384,513 N.E.2d 754, citing State v. White (1968), 15 Ohio St.2d 146, 151,239 N.E.2d 65.
[7] See White, supra.
[8] State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, syllabus.
[9] See State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541.
[10] R.C. 2919.25(A).
[11] R.C. 2919.25(F)(1)(a)(i).
[12] See R.C. 2919.25(F)(2).
[13] See, e.g., State v. Baston, 85 Ohio St.3d 418, 425,1999-Ohio-280, 709 N.E.2d 128.
[14] State v. Bradley, 1st Dist. No. C-940543, syllabus; see, also, State v. Asher (1996), 112 Ohio App.3d 646,679 N.E.2d 1147.