DECISION AND JUDGMENT ENTRY
{¶ 1} This matter comes before the court on appeal from the Wood County Court of Common Pleas. For the reasons stated herein, this court reverses appellant's convictions for three counts of domestic violence.
 {¶ 2} On February 20, 2003, appellant, Larry Parsons, was indicted on three counts of domestic violence, violations of R.C.2919.25(A) and felonies of the fifth degree. He entered not guilty pleas on all three counts. On April 14, 2003, appellant's counsel filed a motion in limine in which he asked the court to exclude the inadmissible hearsay testimony of the state's witnesses, specifically, testimony regarding prior statements by the complaining witness, Kimberly Harding. On April 25, 2003, appellant's counsel filed a "motion to appoint counsel for alleged victim." Appellant's counsel argued that it was unclear what the complaining witnesses would testify to at trial and in the event Harding needed to be advised as to her options as a witness, she should have access to legal counsel. On April 30, 2002, the trial court denied both motions as speculative.
 {¶ 3} A jury trial commenced on May 1, 2003. The prosecutor and defense counsel presented their opening statements to the jury. Before allowing the first witness to take the stand, the trial judge explained to the jury that there was a "preliminary matter" that needed to be addressed regarding the state's first witness. As this was a matter to be considered outside the hearing of the jury, the judge excused them for an early lunch.
 {¶ 4} The judge, the prosecutor, and defense counsel then convened for a side bar conference. Defense counsel asked the judge to call Harding to the stand, outside the hearing of the jury, to determine whether or not she planned to invoke her Fifth Amendment right against self-incrimination. The judge agreed and Harding was called to the stand She answered the prosecutor's initial questions such as her name, address, and her place of employment. She told the prosecutor that she had dated appellant but that she did not live with him. When the prosecutor asked Harding whether or not she had told Officer Williams that appellant had assaulted her, Harding invoked her Fifth Amendment right against self-incrimination. Following a side bar conference and in response to a written motion filed by the prosecutor, the trial judge ordered Harding to testify. The trial judge explained to Harding that pursuant to R.C. 2945.44, he was granting her immunity from prosecution on the charge of making false statements to a police officer. He was not, however, granting her immunity from prosecution on the charge of perjury. Following this exchange, Harding testified that she was injured in a bar fight and that she had lied when she told Officer Williams that appellant had assaulted her. At that point, the trial judge stopped the testimony and asked for the jury to return to the courtroom.
 {¶ 5} Kim Harding was recalled to the stand and in the presence of the jury, she testified that she dated appellant in 2003. During that time, she worked at the North Baltimore, Ohio Marathon store. The prosecutor showed Harding state's exhibits one through five which were photographs of Harding bruised. Harding testified that she received the injuries in a bar fight. She acknowledged that on February 14, 2003, she went to the North Baltimore police station and signed a statement accusing appellant of causing her injuries. On the stand, Harding insisted that she received her injuries in a bar fight and that she only implicated appellant in the statement because she was told she "had to."
 {¶ 6} Amy Noykos testified that she worked at the North Baltimore Marathon store with Harding between January 20 and February 13, 2003. Noykos testified that during this time, Harding lived with appellant. Noykos testified that she knew the couple lived together at 316 W. State Street because she had helped them move in there. One day, Harding came into work with bruises on her arm and her back and a black eye. Harding told Noykos that she received the bruises as a result of being in a bar fight with another woman. Noykos testified that three days later, Harding told her there had been no bar fight and that appellant had inflicted the injuries. On January 26, 2003, Noykos testified that Harding called her and told her that appellant had just beaten her up while she was driving to the home of William Mervin, appellant's brother. Noykos testified that during the time she worked with Harding, Harding on "more than one occasion" came to work with black eyes.
 {¶ 7} Peggy Carles testified that she also worked with Harding at the North Baltimore Marathon store between January 20 and February 13, 2003. Carles testified that Harding told her she was living with appellant. During the time they worked together Carles testified that she observed Harding with a black eye, a bump on her head, and marks on her neck. Carles testified that Harding told her that she received the bump on her head when appellant pushed her into the refrigerator door. Harding claimed she received the black eye from a woman who hit her in a bar. Days later, Carles testified, Harding told her that appellant had given her the black eye. Carles recalled that one day, appellant came into the Marathon store when Carles was working with Harding. Carles testified that appellant appeared to be in a "jealous rage." Carles testified that appellant accused Harding of sleeping with their garbage man.
 {¶ 8} William Merwin testified that on January 26, 2003, appellant and Harding came to his home. Merwin testified that he got into a fight with his brother, appellant. Merwin called the Wood County Sheriff's Department when appellant refused to leave.
 {¶ 9} Wood County Sheriff's Deputy Rod Smith testified that on January 26, 2003, he went to the home of William Merwin. Appellant had already left. At the Merwin home, he encountered Harding whom Smith described as appearing "very agitated." Smith immediately noticed that Harding had two black eyes. When Smith asked Harding about the injuries, she refused to tell him anything. Finally, Harding told Smith that her injuries were sustained in North Baltimore, Ohio and that Smith should not worry about it.
 {¶ 10} Harding's mother, Debra Hancock, testified that on January 26, 2003, her daughter called her and asked her to pick her up at the home of William Merwin. Harding told her mother that appellant had hit her. Debra Hancock testified that when she arrived at the Merwin home she saw that her daughter's face was covered in bruises. Ralph Hancock, a licensed professional counselor, testified that he is the step-father of Harding. On January 26, 2003, he and his wife went to the home of William Merwin. Hancock described the scene as follows:
 {¶ 11} "As my wife and I arrived [Harding] was standing out on the front porch and I was literally astounded. [Harding] was — [Harding's face was] black and blue through her eyes all of the way down to her cheeks. I was astounded. [Harding] was beaten to a pulp. She looked awful and she was crying and hugging my wife. Terrible scene."
 {¶ 12} North Baltimore Police Officer Scott Williams testified that on or around January 20, 2003, he stopped at the Marathon station where Harding worked. Williams testified that he noticed that Harding's face was bruised. On February 13, 2003, he went to Harding's home to investigate her injuries. According to Officer Williams, Harding told him that on January 20, 2003, appellant became upset because he thought Harding was cheating on him. As a result, appellant repeatedly hit her on the head. She told Officer Williams that on January 26, 2003, appellant, again convinced that Harding was cheating on him, punched her in the head while she was driving. Finally, she told Officer Williams that on February 10, 2003, appellant accused her of having an affair with his brother, William Merwin. On that day, appellant dragged her body by her hair, smacked her in the head, punched her in the back, and punched her leg. Officer Williams testified that on February 14, 2003, Harding voluntarily came to the North Baltimore Police Station and wrote out a statement detailing the above incidents. At no time did Harding allege that her injuries were sustained in a bar fight. Lastly, Officer Williams testified that during the time frame of January 20 through February 14, 2003, appellant resided with Harding at 316 W. State Street in North Baltimore, Ohio.
 {¶ 13} State's exhibits one through six, admitted into evidence, were photographs of a bruised Harding taken on February 13, 2003. State's exhibit seven, also admitted into evidence, was the February 14 written statement Harding submitted to the North Baltimore Police Department alleging that she had been assaulted by appellant.
 {¶ 14} On May 2, 2003, the jury found appellant guilty on all counts. He was sentenced to serve 11 months in prison for the first count of domestic violence and 11 months in prison for the second count of domestic violence. The sentence for Count 2 was ordered served consecutively to the sentence imposed for Count 1. He was sentenced to four years community control for the third count of domestic violence. Appellant now appeals setting forth the following assignments of error:
 {¶ 15} "I. The defendants right to due process was violated by the trial courts order for kimberly harding to testify and in its treatment of the witness during her testimony.
 {¶ 16} "II. The trial court erred in allowing the admission of prior inconsistent statements of kimberly harding as well as extrinsic evidence in support of the statements under ohio rules of evidence 607 and 613.
 {¶ 17} "III. The trial court erred in not granting the defendant's motion for judgment of acquittal under ohio rule criminal procedure 29(a).
 {¶ 18} "IV. The evidence was insufficient as a matter of law to support the verdict.
 {¶ 19} "V. The trial court erred in submitting the issue of the defendant's prior conviction to the jury for consideration where there had been a stipulation of fact."
 {¶ 20} In his first assignment of error, appellant contends he was prejudiced when the trial court "admonished" Harding after she asserted her Fifth Amendment right against self-incrimination. Appellant's argument in this assignment of error is based on the premise that "coercion of a witness by the state can affect the due process rights of the defendant." Statev. Asher, (1996), 112 Ohio App.3d 646, 650. In this case, we cannot say that the trial judge's repeated attempts to protect the rights of a witness and to assure that the witness understood the consequences of her actions were coercive. Given the fact that Harding was the only witness whose testimony could be seen as favorable to appellant, we fail to see how he was prejudiced. Appellant's first assignment of error is found not well-taken.
 {¶ 21} In his second assignment of error, appellant contends that the court erred in admitting the prior inconsistent statements of Harding. The admission or exclusion of evidence is generally left to the discretion of the trial court. State v.Maurer (1984), 15 Ohio St.3d 239, 265. "An appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion." State v. Finnerty (1989), 45 Ohio St.3d 104. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. State v. Jenkins
(1984), 15 Ohio St.3d 164. State v. Adams (1980),62 Ohio St.2d 151.
 {¶ 22} Evid.R. 607(A) states:
 {¶ 23} "[T]he credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid. R. 801(D)(1)(a), 801(D)(2), or 803."
 {¶ 24} The existence of "surprise" concerning prior inconsistent statements is a decision within the sound discretion of the trial court. State v. Diehl (1981) 67 Ohio St.2d 389,State v. Reed (1981) 65 Ohio St.2d 117. Surprise exists if the witness's trial testimony is materially inconsistent with a prior statement, and counsel lacked an express forewarning from the witness of his or her intent to recant or repudiate the prior statement. State v. Wisebaker (Aug. 29, 1996), Pike App. No. 96CA567, citing State v. Reed, supra, State v. Blair (1986)34 Ohio App.3d 6. A trial court does not abuse its discretion in finding that the prosecution was surprised when it was aware of a possibility that its witness may change his story but there is no express notice by the witness that he `would wholly deny his prior statement to the police officers', by the witnesses' testimony differing from his prior statement to police. State v.Lewis (1991), 75 Ohio App.3d 689, 696." State v. Smith,
4th Dist. No. 01CA13, 2002-Ohio-3402.
 {¶ 25} A crucial factor in determining whether or not a party has been "surprised" for purposes of Evid.R. 607 is the quality of the warning a party has received that a witness may repudiate their prior statements on the stand In Wisebaker, supra, the court considered the situation of an uncooperative witness. The court held that if a party attempts to speak to a witness who has made a statement and the witness refuses to cooperate and does not expressly forewarn the party of intent to repudiate the prior statement, when the witness repudiates the statement on the stand, a trial court's finding of surprise is substantiated. InState v. Wyatt, 4th Dist. No. 01CA672, 2002-Ohio-4479, the court found that the state was surprised by its witness's contradictory testimony when it was unsuccessful in attempting to establish contact with its witness before he took the stand InState v. Smith, 4th Dist. No. 01CA13, 2002-Ohio-3402, the court held that a letter to the prosecutor from a victim/witness in a domestic violence case informing the prosecutor that she intended to testify that the defendant was a loving husband and father did not amount to an express forewarning to the prosecutor that the victim/witness would repudiate her prior statements to police regarding specific incidences of violence allegedly perpetrated by the defendant.
 {¶ 26} Even though the prosecutor was essentially able to get a preview of Harding's testimony before she took the stand at the hearing dealing with the immunity issue raised in appellant's first assignment of error, we cannot say that the trial court's finding of surprise is an abuse of discretion. While the prosecutor was expressly told that Harding now planned to testify that she lied to the police when she told them she was assaulted by appellant, this was the day of trial, indeed, during the trial itself, even though no testimony had yet been presented to the jury.
 {¶ 27} Appellant next contends that the court erred in admitting Harding's police statement as proof of Harding's prior inconsistent statements. Evid.R. 613(B) permits the admission of extrinsic evidence of a prior inconsistent statement if the statement is offered "solely for the purpose of impeaching the witness." Having already determined that the court did not err in allowing the prosecutor to impeach her own witness through the admission of Harding's prior inconsistent statements, we must conclude that the court did not err in admitting extrinsic evidence of Harding's prior inconsistent statements. Appellant's second assignment of error is found not well taken.
 {¶ 28} Appellant's third and fourth assignments will be addressed together. Appellant contends that the trial court should have granted his motion for acquittal, pursuant to Crim.R. 29(A), because there was insufficient evidence presented to support his conviction.
 {¶ 29} A judgment of acquittal, pursuant to the rule, may not be entered if the evidence is such that reasonable minds can reach different conclusions as to whether each essential element has been proven. State v. Bridgeman (1978), 55 Ohio St.2d 261. In a review of a claim for the sufficiency of the evidence, the relevant inquiry is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found all the essential elements of the crime proven beyond a reasonable doubt. State v. Jones (1999), 90 Ohio St.3d 403,413, citing Jackson v. Virginia (1979), 443 U.S. 307, 319, andState v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. State v. Thompkins (1997), 78 Ohio St.3d 380, 390.
 {¶ 30} Appellant was convicted of violating R.C. 2919.25(A), domestic violence. The elements are as follows: "[N]o person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 31} We recognize the evidentiary hurdles in the prosecution of domestic violence cases. The First District Court of Appeals was recently confronted with such a hurdle in Statev. Hancock, 1st Dist. No. C-030459, 2004-Ohio-1492. As in this case, Hancock was charged with felony level domestic violence. The alleged victim testified at a bench trial that Hancock had not struck her. This testimony was inconsistent with prior written and videotaped statements made by the alleged victim. The prosecutor informed the court that she had been surprised by the testimony and that as a result, her case against Hancock had been affirmatively damaged. The court then allowed the prosecutor to attempt to impeach the witness with the prior statements. Also testifying was the police officer who was present when the witness made her prior inconsistent statements and Hancock who testified that he did not assault the witness. Hancock was convicted of domestic violence.
 {¶ 32} On appeal, Hancock argued that the trial court erred by admitting the witness's prior inconsistent statements as substantive evidence of his guilt. The Hancock court initially found that the prosecutor had shown that she was surprised by the testimony pursuant to Evid.R. 607(A) and, therefore, the trial court had not erred when it admitted the witness's statement for purposes of impeachment. As for appellant's argument that the trial court improperly relied on the witnesses' prior inconsistent statements in finding Hancock guilty, the Hancock court stated: "* * * when a prior inconsistent statement is offered for the purpose of impeachment, the trier of fact may only consider the prior statement as substantive evidence if the prior statement is not inadmissible as hearsay." Id., citing Evid. R. 801, 802, 803, and 804; Dayton v. Combs (1993),94 Ohio App.3d 291.
 {¶ 33} The Hancock court determined that absent the witness's prior inconsistent statements, the only elements of the crime that were proven were (1) the witness and Hancock cohabitated together and, (2) that the witness had suffered physical harm. The state, however, had offered no substantive evidence that Hancock had knowingly caused the witness's injuries. In reversing Hancock's conviction for domestic violence, the court stated:
 {¶ 34} "[E]ven assuming that the testimony of [the witness] and Hancock lacked a shred of believability, the trial court could not use [the witness's] prior statements as evidence of Hancock's guilt because the statements were inadmissible hearsay. When making its determination of guilt, the court was confined to the substantive evidence presented by the state."
 {¶ 35} In this case, the jury heard testimony from Harding's co-workers, her mother, and Officer Williams, all of whom testified that Harding told them she was assaulted by appellant. These statements all amount to hearsay inadmissible pursuant to any of the recognized hearsay exceptions found in Evid.R. 801, 802, 803, 804 or 805. The statements of the witnesses could only be admissible for purposes of impeachment. Absent evidence of Harding's inconsistent statements, the only elements of the crime that were shown in the substantive evidence of this case were that Harding and appellant cohabitated together and that Harding suffered physical harm. As in Hancock, Id., the state in this case failed to present substantive evidence that appellant knowingly assaulted Harding. Accordingly, we find that the court erred in denying appellant's Crim.R. 29 motion for acquittal and that the evidence in this case was legally insufficient to convict him of three counts of domestic violence. Appellant's third and fourth assignments of error are found well-taken. Given our disposition of appellant's third and fourth assignments of error, appellant's fifth assignment of error is moot.
 {¶ 36} On consideration whereof, the judgment of the Wood County Common Pleas Court is reversed. Appellant is ordered discharged. Court costs to appellee.
Judgment reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Lanzinger, J., Singer, J., concur.