DECISION AND JUDGMENT
{¶ 1} Appellant appeals his murder conviction rendered following a trial to the bench in the Lucas County Court of Common Pleas. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} On the morning of July 12, 2004, an employee of an East Toledo florist found the nude body of a woman, face down in a pile of sawdust behind his shop. Police later identified the decedent as Melissa Gregg, a prostitute who worked in the neighborhood.
 {¶ 3} Police noted three stab wounds on the victim's body. Blood flow from these wounds suggested that she was killed in the position in which she was found. The coroner placed the time of death as no more than 24 hours before the body was found and, likely, eight to 12 hours prior.
 {¶ 4} An autopsy revealed that in addition to being stabbed, Gregg had been strangled. Indeed, the coroner later testified that although one of the stab wounds penetrated the heart, the resulting small amount of blood suggested that the heart had stopped or nearly stopped when the wound was inflicted. Semen was found in the victim's anal cavity. The state crime lab extracted DNA from the sample, but initially found no match in its database.
 {¶ 5} Police obtained surveillance video from a security camera in a convenience store across the street from where the body was found. Through the tape they found witnesses who placed Gregg outside the convenience store, arguing with an individual named Louis Boyd, on the night she was killed.
 {¶ 6} Police interviewed Boyd and executed a search warrant on his apartment. During the search, police detectives found a T-shirt with traces of sawdust consistent with that found under the body. Nevertheless, police were unable to otherwise connect Boyd to the killing. Boyd would die of cancer a year later. *Page 3 
 {¶ 7} In 2006, appellant, William E. Nuhfer, II, was convicted of an unrelated felony which resulted in a routine collection of a DNA sample. When the sample was compared to the DNA extracted from the semen found in Melissa Gregg, there was a match of high probability. A re-examination of the convenience store video from the night of the murder showed appellant in the store at the same time witnesses placed Melissa Gregg outside.
 {¶ 8} On June 6, 2006, nearly two years after the murder, police interviewed appellant in the presence of his attorney. Police initially showed appellant a picture of Gregg and ask if he could identify her. Appellant told police that he did not know her, but that he recognized her from television coverage of the 2004 murder. He specifically recalled that she had been found behind a florist shop. Appellant repeatedly denied any sexual contact with the victim or any other prostitute. At the conclusion of the interview, appellant again provided a DNA sample which on retesting confirmed the prior match.
 {¶ 9} On July 26, 2006, a Lucas County Grand Jury indicted appellant, charging him with rape, aggravated robbery and aggravated murder. He pled not guilty.
 {¶ 10} As trial approached, a federal prisoner who had been lodged with appellant in the Lucas County Jail came forward with information that appellant had confessed the murder to him. According to Herbert Smith, appellant told him that he had stabbed Gregg when she objected to him going through her pockets. Smith told prosecutors that appellant also told him that another person-now dead-was involved. Additionally, Smith reported that appellant said that police mistakenly believed that Gregg had been *Page 4 
killed elsewhere and dumped where she was found, but this was not true. Smith said appellant told him that this mistake was because a pile of sawdust had soaked up the blood.
 {¶ 11} The matter went to trial before the court on March 12, 2007. The court heard testimony about the discovery of the body and the collection of the sample that would link appellant to Melissa Gregg. The state introduced the videotape of the interview in which appellant denied he ever had contact with Gregg. The court also heard testimony from Herbert Smith of appellant's jailhouse statements. The officer who interviewed appellant testified that the facts that the victim was killed where she was found and the presence of sawdust was never released to the press.
 {¶ 12} At the conclusion of trial, the court acquitted appellant of rape and robbery, but found him guilty of murder as a lesser included offense of aggravated murder. The court then sentenced appellant to a mandatory term of incarceration for 15 years to life, to be served consecutively to the sentences he was already serving.
 {¶ 13} From his judgment, appellant now brings his appeal. Appellant sets forth the following three assignments of error:
 {¶ 14} "ASSIGNMENT OF ERROR I: Nuhfer's conviction for murder was against the manifest weight of the evidence.
 {¶ 15} "ASSIGNMENT OF ERROR II: Nuhfer's conviction was [sic] murder was not supported by sufficient evidence so the trial court erred by not granting his Rule 29 motion. *Page 5 
 {¶ 16} "ASSIGNMENT OF ERROR III: Nuhfer did not have effective assistance of counsel because his attorney should have requested that another judge preside over the bench trial to prevent prejudice from the proposed 404(b) evidence."
 I. Evid. R. 404(b) Evidence {¶ 17} Prior to trial appellant filed a motion in limine to bar the state from introducing testimony concerning certain "other acts" by appellant pursuant to Evid. R. 404(b). The state sought to introduce testimony from another East Toledo prostitute that some time in 2005, appellant had solicited her for sex, then refused to pay. Another proposed witness would testify that when she was 15, appellant attempted to take her cell phone from her. The trial court granted appellant's motion in limine.
 {¶ 18} On appeal, appellant suggests in his third assignment of error that he was denied effective assistance of counsel because his trial counsel failed to ask the judge who conducted the "other acts" hearing to recuse herself from later hearing the trial to the bench. Appellant maintains that, having heard the proposed testimony, the court could not have ignored it when considering the evidence that was admitted at trial.
 {¶ 19} Appellant also insists that trial counsel should have conducted a more thorough investigation as to the benefits that might accrue to Herbert Smith in return for his testimony.
 {¶ 20} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made *Page 6 
errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. * * * Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington (1984), 466 U.S. 668, 687. Accord, State v. Smith (1985), 17 Ohio St.3d 98, 100.
 {¶ 21} Scrutiny of counsel's performance must be deferential.Strickland v. Washington at 689. In Ohio, a properly licensed attorney is presumed competent and the burden of proving ineffectiveness is the defendant's. State v. Smith, supra. Counsel's actions which "might be considered sound trial strategy," are presumed effective. Strickland v.Washington at 687. "Prejudice" exists only when the lawyer's performance renders the result of the trial unreliable or the proceeding unfair. Id. Appellant must show that there exists a reasonable probability that a different verdict would have been returned but for counsel's deficiencies. See id. at 694. See, also, State v. Lott (1990),51 Ohio St.3d 160, for Ohio's adoption of the Strickland test.
 {¶ 22} Judges in a bench trial are presumed to rely only upon relevant, material and competent evidence. State v. Fox (1994),69 Ohio St.3d 183, 189. Appellant directs our attention to nothing in the record that would negate this presumption. Moreover, there may be sound strategic reasons for trial counsel to wish not to change judges for a bench trial. Not that results are a measure, but we do note that appellant was acquitted of both rape and aggravated robbery and found guilty only of a lesser included offense to *Page 7 
the charged aggravated murder. In any event, the decision not to seek recusal of the judge can only be viewed as strategic and will not form the basis of an ineffective counsel claim.
 {¶ 23} Accordingly, appellant's third assignment of error is not well-taken.
 II. Weight and Sufficiency of the Evidence {¶ 24} In his first two assignments of error, appellant contends that there was insufficient evidence to support his conviction and that his conviction was against the manifest weight of the evidence.
 {¶ 25} A verdict or finding may be overturned on appeal if it is either against the manifest weight of the evidence or because there is an insufficiency of evidence. In the former, the appeals court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. Id. at 386-387. Specifically, we must determine whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt. Id. at 390 (Cook, J., concurring); State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. See, also, State v. Eley
(1978), 56 Ohio St.2d 169; State v. *Page 8 Barns (1986), 25 Ohio St.3d 203. The standard of review for a denial of a motion for acquittal, pursuant to Crim. R. 29, is the same as that for sufficiency of the evidence. State v. Hancock, 1st Dist. No. C-030459,2004-Ohio-1492, ¶ 42, citing State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus.
 {¶ 26} The trial court found appellant guilty of murder in violation of R.C. 2903.02(A). That statute provides that, "No person shall purposely cause the death of another * * *." One acts "* * * purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). Thus, if there was evidence presented by which a reasonable trier of fact could have found beyond a reasonable doubt that appellant intended to cause the death of Melissa Gregg, this is sufficient to support the verdict and evade the Crim. R. 29 motion.
 {¶ 27} There is no doubt that Gregg was intentionally killed. The issue is the identity of the killer. Appellant is seen in surveillance video at a convenience store across the street from where Gregg's body was found at the same time witnesses place Gregg outside the store. Although appellant denied any acquaintance of, or sexual contact with, Gregg, semen with DNA matching his was found in Gregg's anal cavity. While the testimony of jailhouse informants must ordinarily be approached with some caution, Herbert Smith testified that appellant claimed responsibility for the killing while the two were incarcerated together. More importantly for Smith's credibility, he reported *Page 9 
that appellant had been aware that Gregg's body was found on sawdust, a fact never released to the public. This is evidence which, if believed by the trier of fact, establishes all of the elements of the crime of murder. Thus, there was sufficient evidence to support the court's finding of guilt and appellant's second assignment of error is not well-taken.
 {¶ 28} With respect to the weight of the evidence, we have carefully reviewed the record in this matter and fail to find anything to suggest that the court lost its way or that any manifest miscarriage of justice was perpetrated. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 29} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, J., and Arlene Singer, J., concur. *Page 1