**[Cite as *State v. Harrison*, 2022-Ohio-4627.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29345 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-3509 |
| | : | |
| ROBERT HARRISON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 22nd day of December, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
  Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 1717 Liberty Tower, 120 West Second Street, Dayton, Ohio 45402
  Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Robert Harrison appeals from his conviction for gross sexual imposition. For the reasons set forth below, we affirm the judgment of the trial court.

## I.  Facts and Procedural History

{¶ 2} Harrison began a relationship with B.W. in 2013. Shortly thereafter, he moved in with B.W. and her two minor children, T.W. and N.F. In October 2019, T.W. disclosed that she had been sexually abused by Harrison. Both T.W. and N.F. were interviewed at CARE House, where it was disclosed that Harrison had also sexually abused N.F.

{¶ 3} In November 2019, Harrison was indicted on three counts of rape by force, three counts of sexual battery, four counts of gross sexual imposition, and two counts of disseminating matter harmful to juveniles. In June 2020, a second indictment was issued which charged Harrison with one count of rape of a child under thirteen years of age, three counts of sexual battery, and two counts of unlawful sexual conduct with a minor.

{¶ 4} A jury trial was conducted in 2021. The jury found Harrison guilty of the four counts of gross sexual imposition.[1] The jury entered a finding of not guilty as to both counts of disseminating matter harmful to a juvenile, both counts of unlawful sexual conduct with a minor, and two of the three counts of sexual battery charged in the second

---

[1] Two of the counts of gross sexual imposition related to T.W. and two related to N.F.

indictment. The jury was unable to reach a verdict as to the remaining eight counts. Thereafter, the trial court declared a mistrial as to the four counts of rape and the remaining four counts of sexual battery.

{¶ 5} The trial court set a trial date for the eight counts affected by the mistrial. Prior to the retrial, the parties reached a plea agreement under which Harrison entered a plea of no contest to three counts of gross sexual imposition charged by bill of information in exchange for the dismissal of the eight remaining counts in the indictments: four counts of rape and four counts of sexual battery. The parties agreed to an aggregate sentence of eight or nine years for the three counts of gross sexual imposition to which Harrison pleaded no contest and the four counts for which he was found guilty by the jury. The trial court sentenced Harrison to a prison term of nine years.

{¶ 6} Harrison appeals.

## II. Crim.R. 29 Motion Regarding Rape of a Child Under 13

{¶ 7} Harrison's first assignment of error states as follows:

THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S RULE 29 MOTION OF COUNT ONE: RAPE UNDER 13-YEARS OLD

{¶ 8} Harrison asserts the trial court should have granted his Crim.R. 29 motion for acquittal because the State did not present evidence sufficient to support the charge of rape of a child under 13 years of age, particularly asserting that the evidence did not establish that T.W. was under age 13 when the sexual conduct occurred.

{¶ 9} But, as already noted, the jury was not able to reach a verdict on this count, and it was eventually dismissed as part of the plea agreement regarding the eight counts not resolved by the jury. Given this circumstance, there is no remedy we can provide Harrison regarding the trial court's failure to sustain the Crim.R. 29 motion for acquittal on this count. We, thus, conclude that this assignment of error is moot. *State v. Smith*, 2d Dist. Montgomery No. 27981, 2019-Ohio-3592, ¶ 8.

{¶ 10} The first assignment of error is overruled.

### III. Crim.R. 29 Motion Regarding Unlawful Sexual Conduct with a Minor and Sexual Battery

{¶ 11} Harrison asserts the following as his second assignment of error:

THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S RULE 29 MOTION AS IT RELATED TO VENUE ON COUNTS SIXTEEN AND EIGHTEEN

{¶ 12} Harrison claims the State failed to present evidence sufficient to establish venue as it related to counts 16 and 18, unlawful sexual conduct with a minor and sexual battery of N.F.

{¶ 13} The jury acquitted Harrison on both counts. Therefore, the outcome was the same as it would have been if the trial court had granted the Crim.R. 29 motion, making this argument moot. *See State v. Schaub*, 2d Dist. Montgomery No. 20394, 2005-Ohio-3328, ¶ 16, citing *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996).

**{¶ 14}** The second assignment of error is overruled.

### IV.     Impeachment Testimony

**{¶ 15}** Harrison's third assignment of error provides:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT IMPROPERLY ADMITTED THE REBUTTAL WITNESS TESTIMONY OF MS. JAYNEE HALL AS IT WAS OVERLY PREJUDICIAL

**{¶ 16}** Harrison objects to the trial court's decision permitting the State to present testimony from a rebuttal witness.   The State argues the testimony was permissible under Evid.R. 613(B) for purposes of impeaching a defense witness.

**{¶ 17}** Relevant to this argument, the defense presented the testimony of Maria Willman, who testified that Harrison and she had been in a relationship for 11 years during which time they had four children.   This relationship was ongoing during the time Harrison lived with B.W.   Willman testified that she and her children were residing in the home of Harrison's father.   Willman testified she had been present when Harrison brought T.W. to the house.   She refuted T.W.'s claim that Harrison had taken her to an upstairs bedroom where he vaginally raped her when she was under the age of 13. Willman testified that T.W. had remained in the kitchen during the visit.

**{¶ 18}** On cross-examination, the State established that Willman had worked with a woman named Jaynee Hall and that the two women had remained in touch after they stopped working together.   Thereafter, the following colloquy took place between the State and Willman:

Q:    You had conversations with Jaynee where you described conversations that you had with Robert.   Is that right?

A:  Yes.

Q:    And during those conversations with Jaynee, you described conversations with Robert where he talked about [T.W.]?

A:  Yes.

Q:   Specifically where he expressed a fear he had related to [T.W.]?

A:  I don't understand.

Q:  You had a conversation with Robert where he told you that he was afraid he would get - -

DEFENSE COUNSEL:   Objection, Your Honor.

THE COURT:   Approach.

(At sidebar)

THE COURT:   Basis?

DEFENSE COUNSEL:   Before something prejudicial gets before the jury, what conversation is Counsel trying to elicit from her?

THE STATE:   There are two additional conversations that Jaynee was aware of that I did not offer as direct evidence, but I'm offering them for impeachment purposes. Those two conversations are related to statements that Robert made about ejaculating into a cloth and then [T.W.] wiping it on herself and then worrying she was going to get pregnant, and then ejaculating onto [T.W.] and worrying that she was going to get pregnant.

Those two are going to be offered for impeachment purposes at this point.

* * *

THE COURT: It's overruled.

DEFENSE COUNSEL: I would object, Your Honor.

THE COURT: Your objection is noted.

DEFENSE COUNSEL: Unduly prejudicial, and is this conversation on recording or something?

THE STATE: It's on both pieces of discovery I gave you related to Jaynee.

DEFENSE COUNSEL: Yeah, but it's something that Jaynee said she - -

THE STATE: Correct.

DEFENSE COUNSEL: - - said.

THE STATE: Absolutely.

DEFENSE COUNSEL: She didn't say she said it.

THE STATE: No. And she has an opportunity to deny it here or - - yeah.

DEFENSE COUNSEL: I think it's unduly prejudicial, Judge. Note my objection.

THE COURT: It's overruled.

(End sidebar)

Q: All right, Maria. We were talking about conversations you had with Jaynee about statements that Robert had made to you - - so getting back to that. He made - - he - - you had - - there were times where you talked to Jaynee about conversations you had with Robert about [T.W.].

A: Yes.

Q: Is that correct? And there was a conversation you had with Robert that you relayed to Jaynee, where Robert expressed concern that if he ejaculated into a washrag and hung it up and [T.W.] wiped herself with it, could she become pregnant?

A: He actually didn't say it was [T.W.].

Q: He didn't say it was [T.W.]?

A: No. He asked - - he said, in general, if a woman wiped herself with a napkin after an ejaculate was in it [could] they * * * get pregnant.

Q: Okay. So he asked it as kind of a hypothetical?

A: Yes.

Q: Okay. Well, there was another conversation that you had with Robert. In that situation, he indicated that he was concerned that [T.W.] could get pregnant if he - - since he ejaculated on her?

DEFENSE COUNSEL: Objection.

THE WITNESS: I don't recall that conversation.

DEFENSE COUNSEL: Same objection, Judge.

THE COURT: Overruled.

Q: You don't recall having that conversation?

A: No.

Q: Or that conversation didn't happen?

A: It didn't happen.

Q: It didn't happen?

A: No.

Tr. p. 527-531.

{¶ 19} After the defense rested, the State informed the trial court it intended to call Jaynee Hall as a rebuttal witness to the testimony provided by Maria Willman. Defense counsel objected. Thereafter, the following discussion occurred:

THE STATE: * * * Your Honor, to make it clear, I asked Maria about both of those phone calls. One she denied in part; one she denied entirely. Our purpose in calling Jaynee is that this is a fact of - - it's not a collateral fact. It's not like I'm talking about collateral issues. It's just specifically related to the sexual abuse of [T.W.], which is why we're here. Therefore, I believe we can call her as a rebuttal witness to establish that those conversations did happen.

DEFENSE COUNSEL: I think that's a - - like you said, a collateral issue, unduly prejudicial, not relevant, and I would object.

THE COURT: Overruled. Exceptions are noted, and proceed.

* * *

Q: How long have you known Maria?

A: It's been about four years - -

Q: Okay.

A: - - maybe a little longer.

Q: Did you ever have any phone conversations or any conversations with

Maria related to Robert Harrison?

A: Yes.

Q: And were any of those phone conversations related to Robert Harrison - - do you know if any of them concerned [B.W.'s] children?

A: Yes.

Q: And do you know which child it concerned?

A: I believe her daughter.

Q: Okay. What makes you think that?

DEFENSE COUNSEL: Objection. Speculation.

THE COURT: Overruled.

Q: What makes you say that you think it was her daughter?

A: When Maria told me the conversation, the question that he asked her through the conversation led me to believe - -

DEFENSE COUNSEL: Objection, Your Honor.

A: - - she was talking about - - he was talking about her daughter.

DEFENSE COUNSEL: I'm going to object, Your Honor.

THE COURT: Same basis?

DEFENSE COUNSEL: And lack of foundation. No authentication.

THE COURT: Overruled.

Q: Can you tell us, what was that conversation with Maria where she talked about something Robert had said related to [B.W.'s] daughter? Can you tell us about that conversation?

A: Yes. We were at work, Maria and me. She received a phone call from Mr. Harrison. He asked her if - - this is his words, from Maria's mouth to me - - if I masturbated - -

DEFENSE COUNSEL: Objection. Hearsay.

THE COURT: I believe this is offered for - - as a prior inconsistent statement. We're overruling on that basis.

A: If I, Mr. Harrison, masturbated in a washcloth and hung it back up, the daughter comes in the bathroom afterwards and grabs that same washcloth and wipes herself, can she get pregnant.

Q: Did you have any other conversations with Maria related to that?

A: A week later, face-to-face conversation with me and Maria, she told me - -

DEFENSE COUNSEL: Objection, Your Honor.

THE COURT: Overruled on the same basis.

A: - - that he contacted her again about that incident, but admitted, okay, I may have masturbated on her - -

DEFENSE COUNSEL: Objection, Your Honor.

THE COURT: Overruled.

A: - - in her pubic area. Can she get pregnant?

Tr. p. 569-574.

{¶ 20} As stated above, the State claims Evid.R. 613(B) permitted the use of Hall's testimony. That rule states, in pertinent part, as follows:

(B) Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;

(2) The subject matter of the statement is one of the following:

(a) A fact that is of consequence to the determination of the action other than the credibility of a witness[.]

{¶ 21} Evidence admitted under Evid.R. 613(B) is for the "purpose of attacking the credibility of the witness." *State v. Young*, 2021-Ohio-2541, 176 N.E.3d 1074, ¶ 56 (12th Dist.). quoting *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 16.   Prior inconsistent statements may be utilized to impeach a witness "on the theory that the making of two different statements with regard to the same event calls into question the truthfulness of the witness, regardless of the truth or falsity of either of the statements." *Id.*

{¶ 22} When extrinsic evidence of a prior inconsistent statement, such as Hall's testimony, is offered into evidence under the auspices of Evid.R. 613(B), a foundation must be established in which "(1) the witness is presented with the former statement; (2) the witness is asked whether he made the statement; (3) the witness is given an opportunity to admit, deny or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement." *State v.*

*Robinson*, 2d Dist. Montgomery No. 26441, 2015-Ohio-1167, ¶ 27, citing *State v. Mack*, 73 Ohio St.3d 502, 514-515, 653 N.E.2d 329 (1995), quoting *State v. Theuring*, 46 Ohio App.3d 152, 155, 546 N.E.2d 436 (1st Dist.1988). "If the witness admits making the conflicting statement, then there is no need for extrinsic evidence. If the witness denies making the statement, extrinsic evidence may be admitted, provided the opposing party has an opportunity to query the witness about the inconsistency, and provided the 'evidence does not relate to a collateral matter[.]' " *Id.* at ¶ 28, citing *State v. Pierce*, 2011-Ohio-4873, 968 N.E.2d 1019, ¶ 82 (2d Dist.), quoting *State v. Harris*, 2d Dist. Montgomery No. 14343, 1994 WL 718227, * 7 (Dec. 21, 1994).

{¶ 23} "A trial court's ruling on an Evid.R. 613(B) issue, like other evidentiary rulings, is reviewed for an abuse of discretion." (Citation omitted.) *State v. Kulasa*, 10th Dist. Franklin No. 11AP-826, 2012-Ohio-6021, ¶ 13. An abuse of discretion occurs when the court's decision is unreasonable, arbitrary, or unconscionable. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 130.

{¶ 24} In this case, Willman admitted the first statement regarding the washcloth but denied the statement related to T.W. She also denied making the second statement to Hall. Defense counsel had the opportunity to cross-examine Willman regarding the statements. Further, the statements were relevant to the substance of the charges against Harrison. As such, the prerequisites of Evid.R. 613(B) were established. However, because Harrison contends the testimony was more prejudicial than probative, we must determine whether it should have been excluded.[2]

---

[2] Although the foundational requirements of Evid.R. 613(B) were met by the State, the trial court would not have abused its discretion if it had decided not to allow Hall's

{¶ 25} In Ohio, courts draw a distinction between "using a prior inconsistent statement to impeach its maker under Evid.R. 613(B), and using it as substantive evidence, i.e., to prove the truth of the matter asserted." *State v. Laboy*, 8th Dist. Cuyahoga No. 87616, 2006-Ohio-5927, ¶ 19. Generally, "prior inconsistent statements constitute hearsay evidence and thus are admissible only for the purpose of impeachment." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 128, quoting 1 Gianelli, Evidence, Section 607.4 at 482-83 (3d Ed.2010). Thus, "when a prior inconsistent statement is offered for the purpose of impeachment, the trier of fact may only consider the prior statement as substantive evidence if the prior statement is not inadmissible as hearsay." *State v. Heard*, 1st Dist. Hamilton No. C-130789, 2014-Ohio-4643, quoting *State v. Hancock*, 1st Dist. Hamilton No. C-030459, 2004-Ohio-1492, ¶ 40, citing Evid.R. 801, 802, 803 and 804, and *Dayton v. Combs*, 94 Ohio App.3d 291, 640 N.E.2d 863 (2d Dist.1993). Accordingly, the Evid.R. 613(B) admission of extrinsic evidence of prior statements which would otherwise be inadmissible hearsay requires "a limiting instruction to inform the jury that the prior statements [are] only to be considered for impeachment purposes." *State v. Dyer*, 2017-Ohio-426, 84 N.E.3d 57, ¶ 57 (11th Dist.), citing *State v. Armstrong*, 11th Dist. Trumbull Nos. 2001-T-0120 and 2002-T-0071, 2004-Ohio-5635, ¶ 109; *State v. Fields*, 8th Dist. Cuyahoga No. 88916, 2007-Ohio-5060,

---

testimony. This is so because the trial court could reasonably have concluded that if allowed, Hall's testimony would have been improper " 'subterfuge' to get evidence before the jury which [was] not otherwise admissible." *State v. Johnson*, 2015-Ohio-5491, 55 N.E.3d 648, ¶ 69 (2d Dist.), quoting *State v. Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, 939 N.E.2d 218, ¶ 45 (2d Dist.), quoting Annotation, *Calling and Interrogation Witnesses by Court under Rule 614 of the Federal Rules of Evidence.* (Other citations omitted.)

¶ 17; Evid.R. 105.

**{¶ 26}** Turning to the pending case, Harrison did not request and the trial court did not give a limiting instruction. Without such an instruction, the jury was permitted to consider Harrison's statements as substantive evidence of Harrison's guilt. Thus, the trial court's failure to give a limiting instruction constituted error.

**{¶ 27}** But, since Harrison did not request a limiting instruction, we are limited to a plain error review. Crim.R. 52(B) provides that "plain errors * * * affecting substantial rights may be noticed although they were not brought to the attention of the [trial] court." The Ohio Supreme Court has set forth a four-part test for appellate review of plain error. First, the trial court must have committed an error not brough to its attention. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Second, the error must be "obvious." *Id.* Third, the error must have affected a "substantial right," which means that the error probably affected the trial's outcome. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. And finally, based upon the discretionary nature of plain error review, reversal of the trial court's judgment will occur only to prevent a manifest miscarriage of justice. *Id.* at ¶ 23; *Barnes* at ¶ 27.

**{¶ 28}** Though the failure to give a limiting instruction is an obvious error, we cannot conclude the trial court's failure to give a limiting instruction affected the trial's outcome. There was significant evidence in the record to support Harrison's convictions on the four counts of gross sexual imposition, with two of the counts involving N.F. And, based upon the jury's not guilty verdicts on six counts and its inability to reach verdicts on eight counts, we cannot conclude that the judgment must be reversed to prevent a

manifest injustice.

**{¶ 29}** The third assignment of error is overruled.


### V.    Conclusion

**{¶ 30}** All of Harrison's assignments of error having been overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . . .


EPLEY, J. and LEWIS, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Kristin L. Arnold
Hon. Timothy N. O'Connell, Administrative Judge